**ENTERED**
FEB 20 2004
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA OFFICE
DEPUTY

**FILED**
FEB 19 2004
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

✗ Docketed
✗ Copies / NTC Sent
__ JS - 5 / JS - 6
__ JS - 2 / JS - 3
__ CLSD

| | |
|---|---|
| FUNKY FILMS, INC., a California corporation; and GWEN O'DONNELL, an individual, | CASE NO. 03-0964 CJC (PLAx)<br>Hon. Cormac J. Carney |
| Plaintiffs, | Date: February 11, 2004 |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| TIME WARNER ENTERTAINMENT COMPANY, L.P., a Delaware limited partnership; HOME BOX OFFICE, a division of Time Warner Entertainment Company, L.P.; and DOES 1 through 10 inclusive, | Complaint filed: August 22, 2002<br>Filing date: December 8, 2003 |
| Defendants. | |

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

**Procedural Background**

On August 22, 2002, Plaintiffs Gwen O'Donnell and Funky Films, Inc. ("Plaintiffs") filed a complaint against Time Warner Entertainment Company, Ltd. and Home Box Office ("HBO," together "Defendants"), which purported to state claims for copyright infringement and violations of California statutory and common law, unfair competition laws and the Lanham Act. These claims were based on Plaintiffs' assertions that HBO's award-winning television series "Six Feet Under"

derived from Defendants' alleged misappropriation of Plaintiffs' unpublished screenplay, "The Funk Parlor," involving a family-run funeral home. On November 8, 2002, Defendants filed a pre-answer motion to dismiss all claims other than copyright infringement. By order entered December 23, 2002, the Court (per Judge Nora M. Manella) granted Defendants' motion, leaving only the copyright infringement claims.

On December 8, 2003, Defendants moved for summary judgment seeking dismissal of the copyright infringement claims as a matter of law. Defendants argue that the series was independently created by author Alan Ball and that any similarities in the works are not substantial and relate to non-copyright protectable ideas, scenes a faire, stock characters, and the merger of idea and expression. Plaintiffs, on the other hand, argue that the two works not only share a unique and "bizarre blend of sex, death, dark humor and serious social commentary," but also are substantially similar, if not strikingly similar, in terms of plot, themes, dialogue, mood, setting, pace, characters and sequence of events. For the reasons set forth below, the Court agrees with Defendants.

**Summary Judgment Standard**

The moving party on a motion for summary judgment must show that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In copyright cases in the Ninth Circuit, "summary judgment for defendant is appropriate when plaintiff fails to make a sufficient showing that the ideas and expressive elements of the works are substantially similar after defendant has properly identified in a motion for summary judgment that plaintiff has failed to do so." *See Frybarger v. IBM Corp.*, 812 F.2d 525, 528 (9th Cir. 1987) (citations omitted). "[T]here is no special

standard for determining whether summary judgment is appropriate on the issue of substantial similarity of expression." *Id.* (citation and emphasis omitted).

**Elements Of A Copyright Infringement Action**

To establish a successful copyright infringement claim, a plaintiff must show (1) ownership of the copyright in the work which has allegedly been infringed, and (2) that the defendant made unauthorized reproductions (*i.e.*, "copied") protected elements of the copyrighted work. *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003). "Because direct evidence of copying is not available in most cases, a plaintiff may establish copying by showing that the defendant had access to the plaintiff's work and that the two works are substantially similar in idea and in expression of the idea."[1] *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

The Ninth Circuit uses a two-part test to determine whether two works are substantially similar. *Rice,* 330 F.3d at 1174. The "extrinsic" test compares two

---

[1] HBO denies access and contends that Plaintiffs' showing on access is unduly speculative. Where there is no independent proof of access, a plaintiff bears the heightened burden of showing that the two works are so "strikingly similar" as to preclude the possibility of independent creation. *See Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 924 F. Supp. 1559, 1565 (S.D. Cal. 1996) (quoting *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir. 1946)). The Court need not reach this question, however, because, as discussed below, Defendants are entitled to summary judgment on the lower substantial similarity standard that applies when there is independent proof of access. Because the Court is applying the lower standard of substantial similarity in Plaintiffs' favor, there is no need to address Plaintiffs' request pursuant to FRCP 56(f) to conduct further discovery regarding access. *E.g., Mullis v. U.S. Bankr. Ct. for Nevada,* 828 F.2d 1385, 1387 n.6 (9th Cir. 1987) ("[E]ven if appellant's request for further discovery were deemed a sufficient request under F.R.Civ.P 56(f), it was not an abuse of discretion to deny further discovery because, as stated above, the matter was determinable on the pleadings and further discovery would have been futile.").

works in terms of external, objective criteria to determine whether they share a similarity of ideas and expression. *Id.* (internal quotation marks and citation omitted). Analytical dissection and expert testimony may be considered in the application of the extrinsic test. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985). If the works are found to be substantially similar under the extrinsic test, then the subjective, "intrinsic" test is applied.[2] *Id.* A plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests. *Rice*, 330 F.3d at 1174.

The extrinsic test is an objective measure of the articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events. *Id.* (internal quotes and citation omitted). A party claiming infringement may place no reliance upon any similarity in expression resulting from unprotectable elements. General plot ideas and "scenes a faire," scenes flowing naturally from unprotectable plot premises, are not protected by copyright law. *Id.* at 1175; *see also Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002) ("Familiar stock scenes and themes that are staples of literature are not protected.") (citing *Berkic*, 761 F.2d at 1294). "[P]rotectable expression includes the specific details of an author's rendering of ideas, or the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Metcalf v. Bochco*, 294 F.3d 1069, 1073-74 (9th Cir. 2002) (internal quotations and citation omitted).

---

[2] The intrinsic test ascertains whether an ordinary, reasonable audience would find the "total concept and feel" of the two works substantially similar – *i.e.*, whether "the defendant's work [would be recognized] as a 'dramatization' or 'picturization' of the Plaintiff's work." *Id.* Given its focus on the perspective of an ordinary, reasonable person, "expert testimony . . . is inappropriate in applying the intrinsic test." *Id.*

As explained below, an analysis of setting, plot, characters, themes, mood, pace, dialogue, and sequence of events reveals no substantial similarity of expression between the screenplay "The Funk Parlor" ("TFP") and the series "Six Feet Under" ("SFU"). TFP is a farcical murder mystery with an assortment of irreverent characters engaged in a life and death struggle against a psychopathic murderess, whereas SFU is an introspective drama with its major characters composed of a family struggling with their identities and grief at the death of the father.

**Relevant Factual Background**

The relevant facts underlying this motion are found in the parties' respective works – the Plaintiffs' screenplay for TFP and the episodes of HBO's series SFU as exhibited and/or distributed in the form of videocassettes or DVDs.[3] Plaintiffs also submitted an expert report prepared by screenwriting lecturer Robert McKee, in which Mr. McKee concludes that SFU and TFP are "strikingly similar - the frequency and quality of marked parallels between the two works being such that there is no plausible explanation other than copying." In reply to the McKee report, Defendants submitted comprehensive reports from two experts, each independently analyzing and applying the extrinsic test. Having read and considered all three reports, the Court finds it unnecessary to rely on any of them and instead bases its decision on its own independent review and careful evaluation of TFP and SFU. *See Swirsky v. Carey*, 226 F. Supp. 2d 1224, 1230 n.13 (C.D. Cal. 2002) ("The mere fact that plaintiffs have

---

[3] The Court has focused its review of SFU on the first three episodes in light of the sporadic and facially insubstantial nature of the alleged similarities with TFP that Plaintiffs suggest occur in later episodes of SFU. The Court also viewed Plaintiffs' film based on the screenplay, which was submitted by Plaintiffs, before recognizing that the film, a derivative work not mentioned in Plaintiffs' Complaint, was not properly part of the work at issue to be evaluated and compared with SFU. In any event, however, even when considered, the film does not alter any of the analysis or conclusions herein.

presented expert testimony that [the two works] are similar does not preclude this Court from determining that they are not similar as a matter of law under the extrinsic test."); *see also Rice,* 330 F.3d 1170, 1180 (affirming summary judgment notwithstanding opinion of plaintiff's "expert"); *Narell v. Freeman,* 872 F.2d 907, 912-13 (9th Cir. 1989) (same); *Berkic v. Crichton,* 761 F.2d 1289, 1293-94 (9th Cir. 1985) (same); *Olson v. NBC, Inc.,* 855 F.2d 1446, 1450-53 (9th Cir. 1988) (affirming judgment as a matter of law in favor of defendant notwithstanding opinion of plaintiff's "expert"), *Shaw v. Lindheim,* 809 F. Supp. 1393, 1402 (C.D. Cal. 1992) (granting judgment as a matter of law where plaintiff's expert identified "similarities ... between ideas, concepts and other unprotected elements such as stock scenes and aspects of characters which flow naturally from the particular genre or primarily serve a plot function").

**Application of the Extrinsic Test**

At a high level of abstraction, TFP and SFU exhibit some superficial similarities of ideas, but the test for substantial similarity compares "not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985). Focusing on the objective details of these two works, the Court finds that no jury properly instructed on the law of copyright could reasonably conclude that SFU infringed TFP.

Setting

The settings in TFP and SFU are similar only insofar as both works involve contemporary, family-run funeral homes. Just as the idea of "setting" a work in a police precinct, a law office, an apartment, or a hospital is not entitled to copyright protection, the idea of setting a work in a family-run funeral home is an unprotectable

6

idea. *See, e.g., Cavalier*, 297 F.3d at 824 (affirming grant of summary judgment to defendants where principal setting of night sky "naturally and necessarily flows from the basic plot premise of a child's journey through the night sky"); *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("The settings of the parties' works also do not give rise to a finding of substantial similarity. While both ... [works] share a setting of a dinosaur zoo or adventure park, with electrified fences, automated tours, dinosaur nurseries, and uniformed workers, these settings are classic *scenes a faire* that flow from the uncopyrightable concept of a dinosaur zoo."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) (affirming summary judgment when setting of both works involved police working in the 41st Precinct of the South Bronx); *Robinson v. Viacom Int'l, Inc.*, 1995 WL 417076 (S.D.N.Y. July 13, 1995) (1950s era sitcom family interacts with a contemporary family).

Moreover, a closer look at these settings reveals that they are actually quite different. The funeral home in TFP, located in a small, dreary New England town is "in shambles," according to Plaintiffs' screenplay, both visually and financially, and has been declining since John Funk, Jr. was blamed for his girlfriend Jennifer Angeli's death ten years earlier. This is a setting that creates certain challenges for TFP's characters as they are faced with expired embalming products, out-of-date coffins, unpaid bills, and a repossessed bone pulverizer. In addition, the confining small-town setting frustrates John's glamorous career aspirations. In contrast, SFU is set in a well-maintained funeral home located in Los Angeles where the characters primarily struggle internally and with each other, rather than with the business.

Plot

TFP and SFU share basic plot ideas only at the most general level for which no copyright protection exists. *E.g., Cavalier*, 297 F.3d at 824 ("[B]asic plot ideas ... are not protected by copyright law."). Although both works begin with the basic plot

premise of a father's death and the return of a "prodigal son," this ancient notion, which appears in literature as diverse as the Bible and John Steinbeck's novel, *East of Eden*, is developed in very different ways in each work. TFP uses the death of the father to return John to the town where he grew up and the setting of a series of murders and attempted murders. The character of Sophie Zemlaskas quickly dominates the plot as John first seeks to seduce her, and then to murder her. Likewise, although both brothers in TFP inherit the funeral home, John's brother Tom is a relatively minor character. Neither Tom's character nor his relationship with his brother John is fully developed. In fact, Tom dies before John hatches and implements his plot to murder Sophie before she can kill him. In contrast, the plot of SFU initially focuses primarily on the reactions of each Fisher family member to the accidental death of the father. None of the recurring, main characters in SFU are murderers or murder victims.[4] Later episodes explore all manner of human relationships, often leading off with the death of an individual whose funeral will be handled by the Fisher & Sons mortuary.

Characters

Although several of the characters in SFU and TFP share certain superficial similarities, there are no meaningful or substantial similarities between them. As the court held in *Eaton v. NBC*, 972 F. Supp. 1019 (E.D. Va. 1997), "the basic human traits that certain characters share, including age, sex, and occupation, 'are too general

---

[4] Plaintiffs' reliance on the father's death and subsequent division of property to the two sons as the "inciting event" to the plot is no more persuasive than the reliance of the plaintiff in *Denker v. Uhry*, 820 F. Supp. 722 (S.D.N.Y. 1992), on the fact "that each of the works opens with an 'accident' befalling the main character," which necessitates the hiring of a helper, the second most significant character in each work whose developing relationship with the main character constitutes the narrative arc of the work. *Id.* at 732. As the *Denker* court concluded, "at most plaintiff has alleged that [defendant] used a somewhat similar plot device to that employed in [his work], which does not constitute [copyright] infringement." *Id.*

or too common to deserve copyright protection.'" *Id.* at 1029 (citation omitted) (finding "no meaningful or substantial similarities" between two works, notwithstanding "certain superficial similarities, such as two female mechanics, two young boys, and two garage owners").

For example, Plaintiffs seek to equate Nathaniel Fisher, Sr. with John Funk, Sr., but the latter is a minor character who is only very sparingly sketched out in a few scenes that take place before the main action in the story. John Funk, Sr.'s relationships with his sons are never developed and he is only referred to in the most general terms.[5] Nathaniel Fisher, Sr., on the other hand, continues to interact with his wife and children after his death. In fact, one of the main plot lines, which allows for many vivid visual encounters, concerns how each of the surviving family members deals with Nathaniel Fisher, Sr.'s death and their own actions based on their unique relationships with him. Thus, Nathaniel Fisher, Sr. is a well-developed and major character in SFU, whereas John Funk, Sr. is an ill-defined and minor character in TFP.

Although the characters of Nathaniel Fisher, Jr. ("Nate") and John Funk, Jr. ("John") exhibit a degree of similarity on a superficial level, this is primarily due to either the very general level of the similarities (*i.e.*, age, gender, birth order, marital status) or the abstract and unprotectable role that each plays as the "prodigal son." *E.g., Olson v. NBC,* 855 F.2d 1446, 1452-53 (9th Cir. 1988) (noting that distinctive characters such as cartoon characters may be protectable, but characters that embody little more than an unprotected idea are not); *Eaton*, 972 F. Supp. at 1027 (granting summary judgment to defendant and finding no substantial similarity between leading

---

[5] As Judge Learned Hand explained, "the less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly." *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (1930).

male characters in their early twenties who both work with automobiles). Although both Nate and John left home years earlier and return home to participate in the family business after their fathers die, the way these two characters are expressed is very different. Nate was never part of the family business and worked in a health food store in Seattle. He is adrift and searching for meaning in his life. In contrast, John graduated from mortuary school and had an active role in the family business before he left. Unlike Nate's departure, John's was neither amicable nor entirely voluntary, and he went on to pursue a career as a flashy "impresario" in Los Angeles. Unlike Nate, John knows what he wants to do, but his career is frustrated by the competitive nature of the industry. These two characters are not substantially similar.

As previously discussed, the characters of David Fisher and Tom Funk, the "younger brother" characters, are also not substantially similar. Tom Funk is a relatively minor character who is happy to have his brother back to help him run the funeral home. The only real conflict between John and Tom arises from their competition over Sophie. The secondary role of Tom's character is reinforced by his death before the climax of the screenplay. On the other hand, David Fisher is a major character in SFU, and the tension between David and Nate Fisher creates one of the primary plot lines in the early episodes of SFU. David feels like he has made sacrifices to stay and run the family business and deeply resents his brother's reappearance and share in the business. In addition, David's internal struggle with his sexuality is the focus of a major subplot. Although Plaintiffs contend that Tom Funk is also dealing with similar issues, this is never made explicit or developed in TFP.

Although both TFP and SFU include a younger female relative who lives at the funeral home, any similarities end there. Claire Fisher is Nate and David's seventeen-year-old sister who experiments with drugs, has a sexual relationship, rejects the

family business, and struggles with her place in the family and among her peers. Jaimie, in contrast, is a morbid twelve or thirteen-year-old cousin of the Funk brothers who enjoys working in the funeral home and is never shown experimenting with drugs or sex or even interacting with characters her own age. Jaimie's character in TFP is a decidedly minor one, whereas Claire's character is unquestionably a major one.

Plaintiffs' equation of Sophie Zemlaskas in TFP with Brenda Chenowith in SFU is equally unpersuasive. Although Sophie and Brenda are both major characters who are, for some period, sexually involved with the older brother, any similarities end there. Sophie is, according to Plaintiffs' script, "the girl next door at thirty," whose bizarre religious beliefs have turned her into a psychopathic killer. She is a long-time friend of the younger brother, and both brothers propose to her. Brenda, an atheist with no connection to the Fisher family before she meets Nate on an airplane, is certainly dysfunctional, but she exhibits no homicidal tendencies. Both of these characters are emotionally-disturbed women, but beyond this superficial similarity, which it hardly bears mentioning is found in a wide-range of literature throughout history, they are fundamentally different.

Ruth Fisher, the mother of Nate, David, and Claire, is one notable example of a major character without a counterpart in TFP. Ruth Fisher is a central character, and her role is both essential to the main plot and the focus of subplots addressing her grief, guilt, and struggle to redefine her life. After the death of her husband, Ruth Fisher endeavors to keep the remaining family members together, and prevails upon Nate to remain in town after the funeral.

Finally, there are no substantial similarities between the other characters in SFU and TFP. There are characters in SFU that have no equivalent in TFP (*i.e.*,

Frederico Diaz, Keith Charles, Gabriel Dimas), and there are characters in TFP with no equivalent in SFU (*i.e.,* Lamar, Monish, Jimmy, Mr. Z). Although Plaintiff attempts to find similarities between some of these minor characters, the Court finds these arguments unpersuasive. Overall, despite some superficial similarities, there is no substantial similarity of expression between the characters in TFP and SFU.

### Themes

The themes suggested by Plaintiffs are so abstract as to be meaningless.[6] It is clear, however, that the themes of both works emphasize death and sex in profoundly different ways. SFU's general theme is that sex and death provide focal points for relationships. TFP's predominant theme seems to be that sex and religion do not mix. These themes are not substantially similar.

### Mood, Pace, and Dialogue

Although TFP and SFU contain dark humor, their moods are very different. The mood of TFP is that of a farcical murder mystery, whereas SFU is a somewhat serious, introspective family drama. *See, e.g., Anderson v. Paramount Pictures Corp.,* 617 F. Supp. 1, 2 (C.D. Cal. 1985) (finding no substantial similarity where moods of two works were dissimilar: one was a "social comedy" and the other a "romantic melodrama"). There is nothing unique about the pace in either work which suggests a substantial similarity between the two. Both works proceed at an ordinary and expected pace. There is no substantial similarity of dialogue, and, aside from the use of a few of the same terms, the dialogue is vastly different in each work. *See, e.g., Narell v. Freeman,* 872 F.2d 907, 911-12 (9th Cir. 1989) (requiring literal

---

[6] These "themes," which are extraordinarily common in literature and movies, include such broad abstractions as: "The past is not the past," "There is a powerful bond between brothers," "One cannot escape one's destiny," and "To thine own self be true."

similarity of "sequence of creative expression" – not paraphrasing of ideas and not ordinary or commonly-used expressions or phrases and affirming summary judgment notwithstanding duplication of "a few ordinary phrases" and paraphrasing of similar facts); *see also Kouf v. Walt Disney Pictures & Tele.*, 16 F.3d 1046 (9th Cir. 1994) (affirming summary judgment where "dialogues [were] similar in random words, at best"); *Olson*, 855 F.2d at 1450 (affirming summary judgment where plaintiff did not demonstrate "extended similarity of dialogue"); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1185 n.67 (C.D. Cal. 2001) ("Plaintiffs again confuse the 'idea' conveyed by a particular piece of dialogue with the protectable 'expression' thereof."). As such, none of these factors could support a finding of substantial similarity.

### Sequence of Events

There is no substantial similarity between SFU and TFP in terms of sequence of events. TFP opens with John Funk attempting to have sex with Jennifer Angeli just before the hearse they are in crashes. In the next scene, Jennifer's body is in the mortuary prep room and John is blamed for her death. John leaves town in the third scene and returns home for his father's funeral ten years later in the fourth scene. In contrast, SFU begins with a series of shots depicting the Fisher family in various situations, with the focus being Nathaniel Fisher, Sr. driving his hearse just before being hit by a bus and killed. Although Nate, like John, attends his father's funeral, Nate was waiting for his father to pick him up at the airport when Nathaniel Fisher, Sr. was killed. These sequences of events, which are the most similar of those claimed by the Plaintiffs, are not substantially similar, and the works only continue to diverge as they progress.

\\\

\\\

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## Conclusion

Plaintiffs contend, based on *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002), that there are circumstances in which a combination of uncopyrightable elements may give rise to a claim of copyright infringement. This can only be true, however, when "those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). Here, after careful consideration, the Court finds that this standard is not satisfied; SFU and TFP are simply not substantially similar on any meaningful level. Although the works share certain superficial similarities in that they both involve a family funeral home, the father dies, the older, "prodigal son" returns, and the younger brother is gay, the significance and particulars of these unprotectable ideas are vastly different in the two works. Moreover, any similarity between the two works quickly dissipates as the plots turn in vastly different directions. As noted, TFP is at its core a farcical murder mystery with characters struggling against a psychopathic murderess, whereas SFU is an introspective family drama with characters struggling with their identities in the face of love and death. Under these circumstances, the combination of superficial similarities relied upon by Plaintiffs is insufficient as a matter of law to qualify for copyright protection. Accordingly, Defendants are entitled to judgment as a matter of law and the Court hereby GRANTS Defendants' motion for summary judgment. The Judgment will be entered forthwith.

IT IS SO ORDERED.
Dated: February 19, 2004

HONORABLE CORMAC J. CARNEY
United States District Judge